# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| DAVID PHILLIP OSEGERA,<br>Claimant,<br>vs.<br>KILO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | Case No. 21-cv-3009-CJW<br><br>**REPORT AND RECOMMENDATION** |

_____

David Phillip Osegera ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the following reasons, I respectfully recommend that the Commissioner's decision be **affirmed**.

## I.   BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 20) and only summarize the pertinent facts here. Claimant was born March 31, 1972. (AR[1] at 87.) Claimant has at least a high school education and is able to communicate in English. (*Id.* at 93.) He allegedly became disabled due to blindness or low vision, polyneuropathy, cirrhosis of the liver, anxiety, and depression. (*Id.* at 20.) Claimant's onset of disability date is July 14, 2017. (*Id.* at 10.) On January 3, 2018, Claimant filed his application. (*Id.*)  His claim was denied originally and on reconsideration. (*Id.* at 122, 129.) A teleconference hearing was held on January 23, 2020, with Claimant and his attorney

---

[1] "AR" cites refer to pages in the Administrative Record.

1

Bradford D. Myler in Mason City, Iowa and ALJ John Sandbothe in West Des Moines, Iowa. (*Id.* at 16.) Vocational expert ("VE") Vanessa May also appeared. (*Id.*) Claimant and the VE testified. (*Id.* at 64-83.) The ALJ issued an unfavorable decision on February 3, 2020. (*Id.* at 13-25.)

Claimant requested review and the Appeals Council denied review on January 22, 2021. (*Id.* at 1-6.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On March 25, 2021, Claimant timely filed his complaint in this Court. (Doc. 4.) On February 3, 2022, all briefing was completed, and the Honorable C.J. Williams referred the case to me for a Report and Recommendation.

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

2

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment

3

meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A.   *The ALJ'S Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. At step one, the ALJ found that Claimant had not engaged in substantial gainful activity from his application date of July 14, 2017. (AR at 18.)

4

At step two, the ALJ found that Claimant suffered from the following severe impairments: peripheral neuropathy, chronic liver cirrhosis, and lower back pain. (*Id.*) The ALJ considered the effects of Claimant's history of alcoholism. (*Id.*) The ALJ considered the "paragraph B" criteria and determined Claimant only had a mild limitation in concentrating, persisting, or maintaining pace. (AR at 19.) Thus, the ALJ found Claimant's history of alcoholism was nonsevere because it did not cause more than a mild limitation. (AR at 18-19.)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.* at 19.) He specifically considered Listings 1.04 (disorders of the spine), 5.05 (chronic liver disease), and 11.14 (peripheral neuropathy). (*Id.*) He "f[ound] no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." (*Id.*) Thus, the ALJ concluded that because Claimant showed no evidence of an impairment equivalent in severity to a listed impairment, either singly or in combination, "disability cannot be established on the medical facts alone." (*Id.*)

At step four, the ALJ found that Claimant had RFC "to perform light work as defined in 20 CFR 416.967(b) except he could lift twenty pounds occasionally; ten pounds frequently; stand and/or walk for four hours; occasionally balance, stoop, crouch, kneel, crawl, and climb; no exposure to hazards and no driving." (*Id.*) The ALJ considered Claimant's alleged conditions of blindness or low vision, polyneuropathy, cirrhosis of the liver, anxiety, and depression. (*Id.* at 20.) He concluded that "[u]pon review of medical evidence, the objective findings in this case fail to provide strong support for the [C]laimant's allegations of disabling limitations." (*Id.*) Specifically, he found that:

5

> The medical evidence revealed that the [C]laimant had a history of alcohol abuse and liver cirrhosis. The [C]laimant also had a previous history of lumbar disc surgery several years ago, and the [C]laimant complained of paresthesia in his feet, described as numbness, tingling and burning sensation along with pain in the feet. (Exhibit 5f/2). The [C]laimant also complained of minor symptoms in his right hand as well. (Exhibit 5f/2).

(*Id.*) The ALJ also found that a 2017 EMG study did not support the alleged severity of Claimant's polyneuropathy. (*Id.* at 20-21.) A subsequent EMG study, performed in 2018, confirmed the first and showed "no evidence of motor or sensory polyneuropathy or evidence of an acute radiculopathy. (*Id.* at 21.) He found that records also indicated that Claimant's neuropathy improved when he ceased to use alcohol. (*Id.*.) Thus, the ALJ found that although "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . [C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) He considered the opinion of Richard Haas, D.C. but found that the severity of limitations Dr. Haas determined are neither consistent nor supported by the medical evidence.[2] (*Id.*) The ALJ noted that Dr. Haas's opinion was not consistent with the EMG study and other evidence. (*Id.* at 21-22.) He also considered the opinions of Michael Heston, O.D., and Carroll D. Roland, Ph.D. (*Id.* at 22.) The ALJ noted that Dr. Heston's report did not provide insight into Claimant's RFC and thus, did not find it persuasive. (*Id.*) He found Dr. Roland's opinion unpersuasive because it was not consistent with or supported by other medical evidence. (*Id.*) The ALJ also considered the *Polaski* factors and found that the record did not support the disabling symptoms Claimant described. (*Id.*)

---

[2] The ALJ mistakenly identified "Mr. Haas" as the author of this medical opinion. In fact, the form in question appears to have been completed by Travis Johnson, M.D., a family physician in Mason City, Iowa. I address Claimant's argument related to this issue below.

6

At step five, the ALJ found that Claimant is unable to perform any past relevant work; specifically, as a retail supervisor, phone salesperson, or cashier checker. (*Id.* at 23.) Nevertheless, the ALJ found that jobs in significant numbers Claimant can perform exist in the national economy given his age, education, work experience, and RFC. (*Id.* at 24.) Those other jobs include parking lot attendant, photocopy machine operator, and office helper. (*Id.*) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.* at 25.)

## B.  *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence

7

contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III. DISCUSSION

Claimant alleges the ALJ committed reversible error by failing to properly consider Dr. Johnson's opinion. (Doc. 21.)

### A. *Whether the ALJ Properly Evaluated Dr. Johnson's Opinion*

#### 1. *The Parties' Arguments*

Claimant argues the ALJ's assessment of Dr. Johnson's opinion is not supported by substantial evidence because it was improper. (*Id.* at 1.) He asserts the ALJ's decision requires remand because the ALJ erred by: (1) finding the medical evidence inconsistent with Dr. Johnson's medical opinion and (2) misidentifying Dr. Haas as the author of Dr. Johnson's opinion. (*Id.* at 3-4, 5-7.) Claimant asserts the error was harmful because "Dr. Johnson opined [Claimant] could not perform the exertional requirements of even sedentary work, would be unable to concentrate due to his pain, and would have a high number of absences and off-task time, which the vocational expert testified would be work-preclusive." (*Id.* at 7.) The Commissioner argues that the ALJ properly evaluated the record and substantial evidence supports his decision. (Doc. 22 at 8.)

#### 2. *Relevant Law*

Claimant's claim was filed after March 27, 2017. Therefore, the rules articulated in 20 C.F.R. Sections 404.1520c apply to analysis of this opinion. Under these rules, no medical opinion is automatically given controlling weight. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

### a. *Supportability*

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

### b. *Consistency*

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

### c. *Relationship with the Claimant*

ALJs "may, but are not required to, explain how [they] considered the [relationship with the claimant] . . . , as appropriate, when [they] articulate how [they] consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2). The ALJ will address the relationship with the claimant when finding "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, [the ALJ] will articulate how [the ALJ] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in your determination or decision. C.F.R. § 404.1520c(b)(3); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). When evaluating a provider's relationship with the claimant, the ALJ considers (1) the length of the treating relationship, which can "help

9

demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s)"; (2) frequency of examinations; (3) purpose of the treating relationship; and (4) extent of the treating relationship, which includes the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

### 3. Analysis

Dr. Johnson completed a physical RFC worksheet. (AR at 474-78.) The ALJ found that Dr. Johnson's report:

> explained that the [C]laimant's symptoms constantly interfered with his ability to maintain attention and concentration required to perform simple work related tasks. In addition, it was noted that the [C]laimant would need to recline or lie down during a workday; he could stand/walk for one hour; sit for eight hours; frequently lift twenty pounds; occasionally lift twenty to fifty pounds; and it was concluded that the [C]laimant would be absent from work more than four times per month. (Exhibit 7F). Finally, Mr. Haas determined that the [C]laimant that the [C]laimant had marked limitations in the [C]laimant's ability to maintain concentration. The undersigned finds that the severity of these limitations are neither consistent nor are the limitations well supported by the medical evidence. The [C]laimant's EMG study showed that again there was no evidence of motor or sensory polyneuropathy or evidence of an acute radiculopathy. (Exhibit 12F/10). The [C]laimant had normal strength and normal range of motion. (Exhibits 9f/3, 4, 5, 16; 10F/13, 18; 31F/5). Because of these inconsistencies the undersigned does not find this report to be persuasive.

(AR at 21-22.) Considering that finding, I evaluate whether the ALJ properly considered supportability, consistency, and relationship with Claimant.

#### a. Supportability

"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more

10

persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1).

Here, the ALJ cited extensively to the record to show that the medical evidence did not support Dr. Johnson's medical opinion. (AR at 21-22.) In fact, Dr. Johnson's medical opinion consisted of nothing more than unsubstantiated conclusions in an RFC questionnaire. (*Id.* at 474-78.) A physician's opinion may be disregarded when it "consists of nothing more than vague, conclusory statements." *Koch v. Kijakazi*, 4 F.4th 656, 666 (8th Cir. 2021) (addressing the treating physician rule) (quoting *Kraus v. Saul*, 988 F.3d 1019, 1026 (8th Cir. 2021) (quoting *Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996)); *Despain*, 926 F.3d at 1028 (an ALJ may discredit a conclusory physician's report if it is unsupported by the medical record). An opinion in the form of a check the box worksheet based on Claimant's self-report of his symptoms and responses rather than objective medical evidence or evaluative testing may be discounted when unsupported by objective testing or reasoned explanation. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). I find that Dr. Johnson's entire RFC consisted of vague conclusory statements and could have been disregarded on that ground alone.[3] *See Koch*, 4 F.4th at 666; *see also Hogan*, 239 F.3d at 961. In short, nothing in Dr. Johnson's RFC supports the conclusions within.

Regardless, the ALJ found Dr. Johnson's opinion was unsupported by other medical evidence; specifically, the electromyography ("EMG") studies of Claimant. (*Id.* (citing AR 542).) On February 5, 2018, Dr. Alireza Yarahmadi performed an EMG study on Claimant and found "[n]o evidence of motor or sensory polyneuropathy in this study" and "no evidence of acute radiculopathy." (AR at 542.) Claimant argues that the

---

[3] Claimant's argument that Dr. Johnson's opinion is supported by written explanations is unavailing. (Doc. 23 at 3.) Dr. Johnson's RFC's "written explanations" are no more than the briefest of conclusory statements. (AR at 474-48.)

ALJ's description of the EMG report mischaracterized the report to such a degree that the description "was blatantly incorrect." (Doc. 21 at 5.) But the ALJ merely summarized the information from the EMG report quoted above. I find no mischaracterization of that report. Claimant is correct that the 2018 EMG report noted "[Claimant's] symptoms could be related to small fiber neuropathy." (AR at 542.) That statement of a possibility, however, is not a diagnosis or evidence of a condition and Claimant's reliance on it to support his mischaracterization argument is unavailing.

Claimant also argues that an earlier EMG performed in 2017 supports Dr. Johnson's medical opinion. (Doc. 21 at 5.) Although that EMG study "is indicative of length dependent sensorimotor polyneuropathy," it also states, as the ALJ noted, that "[d]istal latencies, motor and sensory conduction velocities of the right median and ulnar nerves were normal." *Compare* (AR at 20) *with* (*id.* at 445.) The ALJ explained at length that the 2017 EMG findings showed limited issues with findings of "normal," "mild," "no significant abnormalities." (*Id.* at 20, 445.) I also note that the more recent 2018 study is "[t]he more relevant medical evidence." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). Indeed, it appears that Claimant's conditions and general health improved after September 2017. (AR at 21.) Thus, the evidence on this issue supports finding Dr. Johnson's medical opinion unpersuasive.

### b. *Consistency*

"The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).

The ALJ found Dr. Johnson's medical opinion inconsistent with the medical evidence because the medical evidence showed Claimant had "[n]o focal sensory or strength deficits," (AR at 484, 486, 512, 517), was "negative" for neurologic symptoms "excepted as noted in h[istory] [of] [present] [illness]," (*id.* at 485), had "no focal

12

neurological deficit" (*id.* at 497), and that Claimant had "no focal tenderness to palpitation of either wrist. . . . [R]ange of motion is intact. Grip strength is 5 out of 5 bilaterally. Median, radial, and ulnar nerve testing normal. . . . Median, radial, and ulnar nerve testing bilaterally show no gross deficits" (*id.* at 1148). As such, the ALJ found Dr. Johnson's medical opinion was unpersuasive.

Claimant, however, argues that Dr. Johnson's opinion is consistent with the medical evidence and that the ALJ erred finding that it was inconsistent. (Doc. 21 at 5.) Claimant suggests the ALJ "cherry picks" the evidence in the record and uses only those parts that support finding non-disability. (*Id.* at 6.) Specifically, Claimant points to the ALJ's finding that Dr. Johnson's opinion was inconsistent with the medical evidence showing Claimant had normal strength and normal range of motion. (*Id.* at 5.) Claimant suggests that the ALJ's reliance on this inconsistency is cherry-picking. Ironically, to support this accusation, Claimant is himself arbitrarily selective in the evidence he cites. Claimant picks the first three symptoms listed from an unranked list of thirteen "common signs and symptoms of neuropathy" to conclude that because "[a]bnormal strength is not even listed in the top five symptoms. . . . [F]indings of normal strength and range of motion have little, if anything, to do with whether [Claimant] has neuropathy."[4] (*Id.* at 6.) Claimant provides no support for his suggestion that "muscle weakness, difficulty walking or moving your arms or legs" and "inability to move a part of the body" are not also common signs and symptoms of neuropathy or symptoms of at least equal importance. *See Cleveland Clinic Neuropathy*.

Claimant's argument is unavailing. As the ALJ summarized, the issue is whether, "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the [C]laimant's pain or other symptoms has been shown, the [ALJ] must

---

[4] *Compare Neuropathy*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/14737-neuropathy (July 6, 2022) (hereinafter *Cleveland Clinic Neuropathy*) *with* (Doc. 21 at 6.)

13

evaluate the intensity, persistence and limiting effects of the [C]laimant's symptoms to determine the extent to which they limit the[C]laimant's work related activities." (AR at 20.) Indeed, Claimant's argument is difficult to follow when he argues that strength "ha[s] little, if anything, to do with whether [Claimant] has neuropathy" because the ALJ never found that Claimant did not have neuropathy. *Compare* (AR at 18, 21 (finding/indicating Claimant did have neuropathy)) *with* (Doc. 21. at 6.)

Claimant's reliance on *Johnson v. Colvin*, No. 3:13-CV-03119-MEF, 2015 WL 328427, at *10 (W.D. Ark. Jan. 26, 2015), is also misplaced. In that case, the issue was that the ALJ "cherry picked" by relying on the non-examining state medical consultants and then failing to address their inconsistent opinions. *Id.* Those consultants' opinions were inconsistent because they found the medical evidence did support the claimant's statements about the severity of his symptoms but then concluded that the medical evidence did not support the claimant's statements about the severity of his symptoms. *Id.* Thus, I find that case distinguishable because the ALJ did not rely on internally contradictory medical opinions to reach his conclusion.

Claimant asserts that the ALJ mistakenly stated, contrary to the record, that "[Claimant] 'had no focal sensory or strength deficits.'" (Doc. 21 at 6.) Claimant is mistaken. Claimant's lack of focal, sensory, or strength deficits is repeatedly noted throughout the record. (AR at 484, 486, 512, 517, 485, 497, 1148.) In his analysis of the medical evidence, the ALJ reviewed how Claimant's symptoms changed over time. As already discussed, the ALJ also found the medical evidence showed that a subsequent exam in February 2018 showed no evidence of motor or sensory polyneuropathy. (AR at 21.) Thus, I find this argument meritless.

Claimant argues the ALJ failed to address "positive findings" showing neuropathy in his feet, unstable gait, decreased fine motor skills in the right hand, tremors, pain, reduced sensation, and decreased reflexes. (Doc. 21 at 6.) "But our review is not

14

whether substantial evidence exists to reverse the ALJ. Rather, we ask whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). As reviewed above, substantial evidence supports the ALJ's finding that Dr. Johnson's opinion was unpersuasive. The ALJ cited both the 2018 EMG study and the 2020 physical exam in his finding that the medical evidence is inconsistent with Dr. Johnson's medical opinion. Both those pieces of evidence are more recent than much of the evidence Claimant cites. The 2020 physical exam is also more recent than Dr. Johnson's 2018 RFC. That there is more recent medical evidence from 2018 and 2020 inconsistent with the older medical evidence Claimant cites is unsurprising. In short, the ALJ properly relied on "relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (2019). Thus, I find the ALJ's decision was supported by substantial evidence and that evidence on this issue supports finding Dr. Johnson's medical opinion unpersuasive.

### c. *Relationship to the Claimant*

ALJs "may, but are not required to, explain how [they] considered the [relationship with the claimant] . . . , as appropriate, when [they] articulate how [they] consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2). The ALJ will address the relationship with the claimant when finding "that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in your determination or decision. C.F.R. § 404.1520c(b)(3); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). When evaluating a provider's relationship with the claimant, the ALJ

considers (1) the length of the treating relationship, which can "help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s)"; (2) frequency of examinations; (3) purpose of the treating relationship; and (4) extent of the treating relationship, which includes the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s)." 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3).

Claimant is correct that the ALJ attributed Dr. Johnson's medical opinion to Dr. Haas. (Doc. 21 at 3.) As Claimant acknowledges, and the Commissioner also points out, Claimant's exhibits containing Dr. Johnson's opinion were mistakenly labeled as coming from Dr. Haas. (Docs. 21 at 4; 22 at 10); (AR at 29.) Still, Claimant suggests that because the regulations require the ALJ to review all the evidence, the ALJ's mistaken attribution shows that he failed to closely review the record and that "there is no way to determine if the ALJ accurately considered the relationship." (Doc. 21 at 4.) Claimant's suggestion is meritless. The ALJ accurately summarized and directly addressed Dr. Johnson's findings in the worksheet. (AR at 21-22.) That he mistakenly referred to Dr. Johnson as "Mr. Haas" when the exhibit was mislabeled is a clear instance of harmless error.[5] (AR at 29.)

Claimant is mistaken that it was error to not address the relationship between Dr. Johnson and Claimant. First, the ALJ addresses the provider's relationship with the Claimant "as appropriate, when [the ALJ] articulate[s] how [he] considered medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ did not address how he considered the

---

[5] This error is so inconsequential that Claimant's counsel also missed this attribution error in the first instance when affirming to the ALJ that Claimant had no objections to admitting the mislabeled evidence into the record. (AR at 64.)

16

relationship between the provider and Claimant. He was not required to. *Id.*; *see Woods*, 32 F.4th at 792 (explaining that "the ALJ no longer needs to make specific findings regarding these relationship factors."). Thus, the attribution error signals nothing about how the ALJ did or did not consider the relationship.

Moreover, it is an immaterial error because the record appears to say little about the: (1) length of the treating relationship; (2) frequency of examinations; (3) purpose of the treating relationship; and (4) extent of the treating relationship. 20 C.F.R. §§ 404.1520c(c)(3), 416.920c(c)(3). Claimant makes no argument about these factors. The record does show Claimant listed Dr. Johnson's contact information in his personal pain/fatigue questionnaire and medical evidence of Claimant's visits to Dr. Johnson. (AR at 269, 421, 428, 433, 437.) Regardless, it is not the Court's place to reweigh the evidence or to find evidence in the record to support Claimant's arguments. *See Vester*, 416 F.3d at 889 (courts do not reweigh evidence); *ASARCO, LLC v. Union Pac. R.R. Co.,* 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (internal quotation marks omitted). Thus, because the ALJ was not required to address the relationship and because Claimant fails to show how the relevant factors would cause the ALJ to decide the case differently, I find the ALJ did not err and recommend the District Court affirm this part of the ALJ's decision.

### d. Harmless Error

Accordingly, because I find the ALJ did not err in his consideration of Dr. Johnson's opinion, I also reject Claimant's argument that the error was harmful. (Doc. 16 at 7.) As addressed above considering supportability and consistency, I find that substantial evidence supported the ALJ's decision to find Dr. Johnson's medical opinion unpersuasive. And even if it was error to mistakenly refer to Dr. Johnson as "Mr. Haas" because an exhibit was mislabeled, I would still find the error harmless. "An error is harmless when the claimant fails to 'provide some indication that the ALJ would have

17

decided differently if the error had not occurred.'" *Lucus*, 960 F.3d at 1069 (quoting *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012)). Claimant asserts the error was harmful because "Dr. Johnson opined [Claimant] could not perform the exertional requirements of even sedentary work, would be unable to concentrate due to his pain, and would have a high number of absences and off-task time, which the vocational expert testified would be work-preclusive." (Doc. 22 at 7.) But Claimant makes no showing that had the ALJ addressed the relationship with Claimant in his decision he would have decided the case differently. Indeed, Claimant fails to identify or address what, if any, of the relevant criteria for assessing the relationship with a claimant would support a different decision. (*See* Doc. 22 at 3-4.) After all, the medical evidence inconsistent with the medical opinion would remain inconsistent. It was Claimant's burden to present evidence that the ALJ would have decided the case differently had he addressed those criteria, *see Byes*, 687 F.3d at 917, and Claimant has not satisfied his burden. At most, the misnaming reflects an "arguable deficiency in opinion-writing technique" that has no bearing on the outcome. *Hepp v. Astrue*, 511 F.3d 796, 806 (8th Cir. 2008). Thus, I reject this argument.

### *4.     Conclusion*

For all the reasons stated above, I conclude that the ALJ did not err in finding Dr. Johnson's opinion unpersuasive. Thus, I recommend the District Court affirm the ALJ's decision.

### IV.     CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must

specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 14th day of July, 2022.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa